**UNITED STATES of America**

**v.**

**George DIBIASE.**

**Crim. No. N–88–4(JAC).**

United States District Court, D. Connecticut.

May 6, 1988.

Raymond B. Ludwiszewski, Associate Deputy Atty. Gen., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Darcy McGraw, Wiggin & Dana, New Haven, Conn., for defendant.

Ronald Weich, John R. Steer and David E. Anderson, Office of the Gen. Counsel, U.S. Sentencing Com'n, Washington, D.C., for U.S. Sentencing Com'n, amicus curiae.

## RULING ON MOTION FOR ORDER DECLARING THE FEDERAL SENTENCING GUIDELINES UNCONSTITUTIONAL

JOSÉ A. CABRANES, District Judge:

Defendant George DiBiase has moved for an order declaring the Sentencing Guidelines ("Guidelines") promulgated by the United States Sentencing Commission (the "Commission") invalid on the grounds that the Sentencing Reform Act of 1984, 28 U.S.C. §§ 991–98 (1987) (the "Act"), vio-

lates the constitutional doctrines of separation of powers and nondelegation.

### Background

The Sentencing Reform Act of 1984 constitutes part of the Comprehensive Crime Control Act of 1984,[1] legislation adopted by an "unusual bipartisan consensus"[2] and described by Senator Thurmond, the Senate manager of the proposals, as "the most comprehensive set of improvements in the Federal criminal laws ... I have witnessed in all my years in the Congress."[3] A co-sponsor of the legislation, Senator Kennedy, then the ranking minority member of the Senate Judiciary Committee, described it as "proof that Congress can adopt significant anticrime legislation ... without jeopardizing the constitutional rights or civil liberties of any citizen."[4] Title II of the legislation, described by Senator Kennedy as one of the "two areas [along with bail] where reform is most overdue," was designed to "replace ... our haphazard approach to sentencing with a new system which establishes a commission to develop guidelines for judges, abolishes parole, and provides for appellate review of sentences."[5]

Sponsors of this legislation expressed a particular concern about asserted "disparity" in sentences for similar crimes, a phenomenon identified and publicized in a widely-discussed study by Marvin E. Frankel. Frankel traced sentencing "disparities" to "the almost wholly unchecked and sweeping powers we give to judges in the fashioning of sentences"—powers that Frankel, himself then a United States District Judge in New York, found "terrifying and intolerable for a society that professes devotion to the rule of law."[6] Frankel's work expresses his deep skepticism about "[t]he largely unbridled powers of judges and prison officials,"[7] his search for "concrete agreement on concrete factors capable of being stated, discussed, and thought

1. Pub.L. No. 98–473, 98 Stat. 1837 (Oct. 12, 1984).

2. 130 Cong.Rec. S330 (daily ed. Jan. 27, 1984) (remarks of Sen. Laxalt).

3. 129 Cong.Rec. S11679 (daily ed. Aug. 4, 1983) (remarks of Sen. Thurmond).

4. *Id.* at 11709 (remarks of Sen. Kennedy).

5. *Id.*

6. M. Frankel, *Criminal Sentences* 5 (1973) (*"Criminal Sentences"*); *see also* Frankel & Orland, *Sentencing Commissions and Guidelines*, 73 Geo. L.J. 225 (1984) (*"Sentencing Commissions"*).

7. *Criminal Sentences, supra* note 6, at 103.

about in the style of a legal system for rational people rather than a lottery," [8] his evident faith in an administrative agency or "sentencing commission" of "prestige and credibility" headed by "people of stature, competence, devotion and eloquence," [9] and his vision of "the possibility of using computers as an aid toward orderly thought in sentencing." [10] All of these views reflect the fears of discretionary authority, the confidence in rulemaking by administrative agencies drawing upon experts and technology, and the aspiration for a rational—if not perfect—order in social affairs so characteristic of the modern age.[11] And all of these views find full expression in the genesis and reception of the Sentencing Reform Act of 1984.

The report submitted to the Senate by Senator Thurmond shows the deep imprint of Frankel's vision: it traces "[sentencing] disparities ... directly to the unfettered discretion the law confers" on judges and parole authorities.[12] Echoing Frankel's view of the sentencing process as a "lottery," Senator Kennedy described the "system of sentencing in this country" as "a system of roulette." [13] The chairman of the sentencing commission established under this legislation proclaimed that "the Commission has sought to solve the practical and philosophical problems of developing a coherent sentencing system by taking an empirical approach that uses as a starting point data estimating current sentencing practices." [14]

The sentencing commission established under the Sentencing Reform Act of 1984 was instructed to create "guidelines" for sentencing. Those guidelines were, among other things, to "reflect the general inappropriateness of considering the education, vocational skills, employment record, family ties and responsibilities, and community ties of the defendant." [15] This led the commission, in the words of Judge Ellsworth A. Van Graafeiland:

> to concentrate more on the nature and extent of the injury or harm resulting from the defendant's acts than on the nature of the offense and the defendant's character and mental processes. The guidelines group offenses into a number of broad categories, for example, "Offenses Involving the Person", "Offenses Involving Property", etc., and assign to each a basic offense point value. The sentencing judge is instructed to modify the basic offense value by looking not only to the offense for which a conviction was obtained but also to the conduct or harms committed in furtherance of that offense, i.e., to look at the complete picture of the defendant's wrongdoing. This is to be accomplished by referring to so-called "Special Offense Characteristics" and "Cross References" listed for each offense and adding whatever points are called for in these subchapters.

> The sentencing judge is instructed to then modify the total offense value score by looking to certain so-called "Offender Characteristics," which assign numerical multiples for such things as the defendant's role in the offense, his criminal history, his post-offense conduct, etc.

8. *Id.* at 115.

9. *Id.* at 119–20.

10. *Id.* at 115.

11. It is one of the ironies of the current movement for sentencing reform that it stems from a world view so similar to that which gave us the indeterminate sentence, and other aspects of a system of "individualized justice," against which the proponents of sentencing guidelines rebel.

12. S.Rep. No. 225, 98th Cong., 2d Sess. 38, *reprinted in* 1984 U.S.Code Cong. & Admin. News 3182, 3221 ("Thurmond Report"). *See id.* ("[E]very day Federal judges mete out an unjusti-fiably wide range of sentences to offenders with similar histories, convicted of similar crimes, committed under similar circumstances."); *id.* at 45 ("Sentencing disparities that are not justified by differences among offenses or offenders are unfair both to offenders and to the public.").

13. 130 Cong.Rec. S525 (daily ed. Jan. 31, 1984) (remarks of Sen. Kennedy). *See Criminal Sentences, supra* note 6, at 115.

14. Remarks of Judge William W. Wilkins, Chairman, United States Sentencing Commission, before the Subcommittee on Criminal Justice (July 23, 1987).

15. 28 U.S.C. § 994(e).

The length of the defendant's sentence is determined by reference to a table which provides a maximum and minimum period of incarceration or the final point total.[16]

The legal regime established by the legislation and the sentencing commission has been criticized as "sentencing by [a] numbers approach [that] is too depersonalized, too complicated, too punitive, and too burdensome of application."[17] At one stage of the commission's work, forty-three district judges in the Second Circuit issued a public statement (supported by the circuit judges of the Circuit) noting, *inter alia*, that the use of mathematical values had reduced the discretion of the sentencing judge "almost to the point where the sentencing process could be performed by a computer or an accountant."[18]

Whether the asserted quest of the sentencing commission for scientific precision is "illusory or dangerous," as some have suggested,[19] does not, of course, concern a court confronted by the question of the constitutionality of the relevant provisions of the Sentencing Reform Act of 1984. Whether the apparent loss of confidence in judicial discretion is justified; whether the perceived "disparities" in sentencing are real, and, if so, whether they are indeed "shameful"[20]; whether the statement that "similar offenders who commit similar offenses [should be] sentenced in a similar fashion"[21] is a coherent policy or merely a slogan; and whether the United States Sentencing Commission can (or should or will) improve upon judicial discretion by "think[ing] uniquely and connectedly of something genuinely resembling a *system*,"[22] are matters for determination by the political departments of our national government. The narrow and relatively uncomplicated question presented to the courts by the Sentencing Reform Act of 1984 is this: whether the Sentencing Guidelines promulgated by the United States Sentencing Commission under the Sentencing Reform Act of 1984, 28 U.S.C. §§ 991–98 (1987), are unconstitutional.

Momentous as the question may be, it is not presented in circumstances that can be regarded as unique or even unusual. Far from it. In the nature of things, the question has already been presented to one and all of the United States District Judges of Connecticut regularly handling criminal cases, who jointly heard oral argument on the matter on May 5, 1988. And it is reasonable to assume that it has by now been presented—or soon will be presented—to each of the several hundred federal district judges in the Republic.[23]

**16.** Van Graafeiland, *Some Thoughts on the Sentencing Reform Act of 1984*, 31 Vill.L.Rev. 1291, 1293 (1986).

**17.** *Id.* at 1293.

**18.** Joint Statement Concerning the Proposed Sentencing Guidelines (Dec. 1, 1986) at 5, *quoted in* Van Graafeiland, *supra* note 16, at 1293–94; *see* N.Y.L.J., Dec. 4, 1986, at p. 1, col. 2. Whether the revisions made by the sentencing commission in response to the Joint Statement vitiated the concerns expressed therein remains open to question.

**19.** *See* Van Graafeiland, *supra* note 16, at 1294 (quoting "a report by subcommittee member of the Association of the Bar of the City of New York").

**20.** Thurmond Report, *supra* note 12, at 3248.

**21.** United States Sentencing Commission Preliminary Draft of the Sentencing Guidelines, (Sept. 1986) at i.

**22.** *Sentencing Commissions, supra,* note 6, at 247.

**23.** In the last several months, at least sixty courts have decided the issue of the Guidelines' validity. Among those courts, at least twenty-seven have upheld the Guidelines, *see, e.g., United States v. Johnson,* 682 F.Supp. 1083 (W.D.Mo. 1988); *United States v. Erves,* No. CR87–478A (N.D.Ga. Mar. 22, 1988); *United States v. Chambless,* 680 F.Supp. 793 (E.D.La.1988); *United States v. Villanueva,* 680 F.Supp. 1411 (S.D.Cal.1988), while at least thirty-three have declared them unconstitutional, including at least two in this Circuit, *see, e.g., United States v. Olivencia,* 689 F.Supp. 1319 (S.D.N.Y.1988); *United States v. Martinez,* No. 87 Cr. 1020 (S.D.N.Y. Apr. 11, 1988); *see also United States v. Tolbert,* 682 F.Supp. 1517 (D.Kan.1988); *United States v. Estrada,* 680 F.Supp. 1312 (D.Minn.1988); *United States v. Smith,* 686 F.Supp. 847 (D.Colo.1988); *United States v. Frank,* 682 F.Supp. 815 (W.D.Pa.1988); *United States v. Lopez–Banon,* No. 87–1309–K (S.D.Cal. Feb. 26, 1988); *United States v. Manley,* No. 87–1290–R (S.D.Cal. Feb. 18, 1988); *United States v. Arnold,* 678 F.Supp. 1463 (S.D.Cal.1988).

So it is that, although the question is one of great importance, it is not one on which an individual judge—or, perhaps, even a single court of appeals—can hope to have any substantial impact. Quite clearly, the faster the question is presented to the appellate courts, and especially to the Supreme Court, the better for all concerned. In the meantime, however, the federal criminal justice system cannot be placed on "hold"; until we have authoritative guidance by higher courts, each district judge must resolve the constitutional question as best he or she can. In these circumstances, it appears that there is little that any district judge can say on the constitutional question that has not already been said by other judges and by numerous commentators. Circumstances thus militate in favor of a speedy disposition of the issue as it is presented by this particular defendant in this particular case.

### Discussion

Defendant was charged in a five-count indictment with violations of 21 U.S.C. § 841(a)(1). These violations were all alleged to have occurred after November 1, 1987. On March 8, 1988, defendant entered a plea of guilty to all five counts of the indictment. A presentence report has been prepared by the United States Probation Office pursuant to 18 U.S.C. § 3552(a). The court has before it all the information necessary to sentence the defendant pursuant to the Guidelines. Sentencing in this case is scheduled for May 6, 1988.

### A.

At the outset, the court addresses the question of the ripeness of the defendant's challenge to the Guidelines. This inquiry involves "evaluating both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). An issue is not "fit" for judicial review when it involves " 'contingent future events that may not occur as anticipated, or indeed may not occur at

all.' " *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 580, 105 S.Ct. 3325, 3333, 87 L.Ed.2d 409 (1985) (quoting 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3532 (1984)). In this case, there is no question that the Guidelines, should they be upheld, will be applied to the defendant because he has already pleaded guilty to conduct occurring after the effective date of the Guidelines, November 1, 1987. The defendant's presentence report was prepared in accordance with the Guidelines, and the court has received all the relevant information. Indeed, based upon a consideration of the full record of this case, including the presentence report, the court finds that application of the Guidelines to this defendant could result in a more severe sentence than he might have received under the pre-Guidelines regime. In these circumstances, the possible hardship to the defendant of withholding consideration of his motion is clear. Accordingly, the court concludes that his motion is ripe for judicial review.

### B.

The defendant raises the following issues: (1) whether the placement of the Commission in the judicial branch, the service of Article III judges on the Commission, or the President's removal power over the members of the Commission constitutes a violation of the separation of powers doctrine; and (2) whether the powers given to the Commission violate the nondelegation doctrine.

Our tripartite system of government reflects the fundamental principle that " '[t]he accumulation of all powers legislative, executive and judiciary in the same hands, whether of one, a few or many, and whether hereditary, self appointed, or elective, may justly be pronounced the very definition of tyranny.' " *Immigration and Naturalization Service v. Chadha,* 462 U.S. 919, 960, 103 S.Ct. 2764, 2789, 77 L.Ed. 2d 317 (1983) (Powell, J., concurring in the judgment) (quoting *The Federalist* No. 47, at 324 (J. Madison) (J. Cooke ed. 1961).

However, the separation of powers principle does not require a "hermetic sealing off of the three branches of Government from one another." *Buckley v. Valeo,* 424 U.S. 1, 121, 96 S.Ct. 612, 683, 46 L.Ed.2d 659 (1976) (*per curiam*). Instead, the principle of separation of powers "enjoins upon [the] branches separateness but interdependence, autonomy but reciprocity." *Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 635, 72 S.Ct. 863, 870, 96 L.Ed. 1153 (1952) (Jackson J., concurring).

Although separation of powers is not a clearly defined doctrinal area, the Supreme Court has in recent years advocated a functional approach to separation of powers issues. *See Nixon v. Administrator of General Services,* 433 U.S. 425, 443, 97 S.Ct. 2777, 2790, 53 L.Ed.2d 867 (1977); *United States v. Nixon,* 418 U.S. 683, 707, 94 S.Ct. 3090, 3107, 41 L.Ed.2d 1039 (1974). In general, the separation of powers principle may be violated in two ways. "One branch may interfere impermissibly with the other's performance of its constitutionally assigned function. Alternatively, the doctrine may be violated when one branch assumes a function that more properly is entrusted to another." *Chadha,* 462 U.S. at 963, 103 S.Ct. at 2790 (citations omitted) (Powell, J., concurring in the judgment).

As a preliminary matter, the court must determine in which branch the Commission properly belongs. The fact that Congress established the Commission as "an independent commission in the judicial branch," 28 U.S.C. § 991(a), although entitled to deference, is nevertheless not conclusive. *See Bowsher v. Synar,* 478 U.S. 714, 106 S.Ct. 3181, 3191–92, 92 L.Ed.2d 583 (1986). Congress established the Commission primarily to promulagate rules and policies interpreting the Act. *See* 28 U.S.C. § 994(a). Although Congress apparently acted out of belief that "sentencing should remain primarily a judicial function," S.Rep. No. 225, 98th Cong., 1st Sess. 51, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3342, the fact remains that the primary task of the Commission—to promulgate Guidelines —is in essence an executive function. *See United States v. Smith,* 686 F.Supp. 847,

862 (D.Colo.1988); *United States v. Arnold,* 678 F.Supp. 1463, 1469–70 (S.D.Cal. 1988). "Interpreting a law enacted by Congress to implement the legislative mandate is the very essence of 'execution' of the law." *Bowsher,* 106 S.Ct. at 3192. Because its primary function is to interpret and implement the Act, the Commission exercises an inherently executive function.

■ In these circumstances, placement of the Commission in the judicial branch violates the principle that one branch may not assume a function more properly entrusted to another branch. The Constitution limits the power of the federal judiciary to the resolution of cases and controversies. U.S. Const. art. III, § 2, cl. 1. Although the Supreme Court has held that Congress may delegate to the judiciary the authority "to regulate the practice and procedure of federal courts," *Sibbach v. Wilson & Co., Inc.,* 312 U.S. 1, 9, 61 S.Ct. 422, 424, 85 L.Ed. 479 (1941), the Commission's authority to promulgate sentencing guidelines is not in aid of sentencing in the way that the Administrative Office of the United States Courts, the Judicial Conference, or the Advisory Committee on the Federal Rules of Civil Procedure is in aid of the administration of the judicial branch. *See Arnold,* 678 F.Supp. at 1469 n. 7; *see also Chandler v. Judicial Council,* 398 U.S. 74, 90 S.Ct. 1648, 26 L.Ed.2d 100 (1970); *Wayman v. Southard,* 23 U.S. (10 Wheat.) 1, 6 L.Ed. 253 (1825). The Guidelines do not, in fact, "guide" judges in their decisionmaking functions at all, but impose upon judges a sentencing regime subject to modification only in special circumstances. *See* 18 U.S.C. § 3553(b). Such a mandatory, substantive regime can hardly be termed an administrative procedure designed to aid judges in the exercise of their decisionmaking powers.

In fact, placement of the Commission in the judiciary impermissibly accords to the judicial branch powers beyond those allocated to the judiciary by the Constitution. It has long been settled that "neither the Legislative nor the Executive Branches, can constitutionally assign to the Judicial any duties, but such as are properly judi-

cial, and to be performed in a judicial manner." *Hayburn's Case*, 2 U.S. (2 Dall.) 408, 409, 1 L.Ed. 436 (1792). As one commentator has observed, "the case and controversy requirement and the principle of judicial independence it reflects forbids judges from making rules outside the case and controversy context on matters external to the administration of justice or from entering a formal working relationship with members of other branches of government." Note, *The Constitutional Infirmities of the United States Sentencing Commission*, 96 Yale L.J. 1363, 1378 (1987) (Note, *"Constitutional Infirmities"*).

Moreover, even if the court were to find that the Commission properly exercised a judicial function when it elaborated a new sentencing regime for the federal criminal justice system, its placement in the judicial branch raises further questions regarding the President's power to remove the commissioners. This removal power results in an impermissible control by the Executive over the functioning of the judicial branch. *See Bowsher*, 106 S.Ct. at 3192. As the Supreme Court has observed, "[t]he hydraulic pressure inherent within each of the separate Branches to exceed the outer limits of its power, even to accomplish desirable objectives, must be resisted." *Chadha*, 462 U.S. at 951, 103 S.Ct. at 2784. Placement of the Commission in the judicial branch where those commissioners are subject to presidential removal power violates the principle that one branch may not impermissibly interfere with the other's performance of its functions.

The court may, of course, sever the Act's language locating the Commission in the judicial branch. Doing so necessarily raises the question whether placement of the Commission in the executive branch also violates the separation of powers principle. The defendant argues that the mandatory inclusion of Article III judges on a Commission exercising an executive function impermissibly expands the role of the federal judiciary beyond its constitutional bounds. The Supreme Court has consistently held that "executive or administrative duties of a nonjudicial nature may not be imposed on judges holding office under Art. III of the

Constitution." *Buckley*, 424 U.S. at 123, 96 S.Ct. at 684. The government contends that the judge-commissioners "serve not in their judicial capacity, but rather as individuals who, because they are judges, possess special expertise in the area of sentencing." United States' Memorandum in Opposition to Defendant's Motion for an Order Declaring Federal Sentencing Guidelines Unconstitutional (filed Apr. 14, 1988) at 18. The government correctly notes that judges have served one or another function in the executive branch from the early days of the Republic. *See In the Matter of the President's Commission on Organized Crime, Subpoena of Scarfo*, 783 F.2d 370, 377–78 (3d Cir.1986). However, the Act at issue here mandates the inclusion of three judges on the Commission, a fact that distinguishes this case from those situations involving a judge's individual and voluntary participation in the executive branch. *See id.* at 376 & n. 3. The Act's explicit mandatory inclusion of judges on the Commission reveals that the statute includes judges *qua* judges, and not in anything like an individual capacity. In this respect, the Act impermissibly expands the role of the federal judiciary beyond its constitutionally delimited sphere.

Placement of the Commission in the executive branch would violate the separation of powers in another respect. It is well established that Article III serves to protect "the role of the independent judiciary within the constitutional scheme of tripartite government." *Thomas*, 473 U.S. at 583, 105 S.Ct. at 3334. "Impartiality is one of the central, constitutionally-ordained, requirements of the federal judicial office." *In re Application of the President's Commission on Organized Crime, Subpoena of Scaduto*, 763 F.2d 1191, 1197 (11th Cir. 1985). The mandatory inclusion of Article III judges on the Commission compromises judicial neutrality by charging judges with both the execution of federal sentencing laws and the imposition of sentences in particular cases. Further, "even if a judge could satisfy himself that he could separate his participation on the Commission from his judicial functions, it is not clear that litigants could sustain equal faith in his

impartiality." *Id.* For these reasons, the mandatory inclusion of Article III judges on the Commission interferes impermissibly with the functioning of the judicial branch. *See Note, Constitutional Infirmities, supra,* at 1386 ("[T]he Sentencing Commission effects a permanent collaborative relationship between the judiciary and executive that violates the norm of judicial independence.").

Accordingly, the court finds that the Act violates the constitutional doctrine of separation of powers. The government has failed to come forward with any convincing evidence that the disruption of the proper functioning of the separate branches of government occasioned by the Act "is justified by any overriding need to promote objections within the constitutional authority of Congress." *Nixon v. Administrator,* 433 U.S. at 443, 97 S.Ct. at 2790. In view of this holding, the court need not reach defendant's argument that the Act is an unconstitutional delegation of legislative power. In any event, this argument appears to be without merit. *See Smith,* 686 F.Supp. at 869–70; *Arnold,* 678 F.Supp. at 1466–69.

## CONCLUSION

■ For the foregoing reasons, the court holds that the Act, 28 U.S.C. §§ 991–98, violates the constitutional doctrine of separation of powers. Because the Guidelines were promulgated pursuant to an unconstitutional statutory provision, the Guidelines themselves are null and void. Moreover, because 18 U.S.C. § 3553(a)(4) and (5), and (b), (c)(1) and (2), and (e) require the district courts to apply the Guidelines in imposing sentences, these provisions are also found to be unconstitutional.

■ Mindful of the well-established principle that "a court should refrain from invalidating more of the statute than is necessary," *Regan v. Time, Inc.,* 468 U.S. 641, 652, 104 S.Ct. 3262, 3269, 82 L.Ed.2d 487 (1984) (plurality opinion), the court shall sever those provisions of the Act that are unconstitutional—28 U.S.C. §§ 991–98 and 18 U.S.C. § 3553(a)(4) and (5), and (b), (c)(1) and (2), and (e)—from the remainder of the Act. " 'Unless it is evident that the legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as law.' " *Buckley,* 424 U.S. at 108, 96 S.Ct. at 677 (quoting *Champlin Refining Co. v. Corporation Commission,* 286 U.S. 210, 234, 52 S.Ct. 559, 565, 76 L.Ed. 1062 (1932)). Because the remainder of the Act is "fully operative as law," the court shall therefore proceed to sentence the defendant in accordance with the remaining provisions of the Act and the statute governing the defendant's underlying offense.

It is so ordered.

## ORDER

After oral argument and upon a consideration of the full record of this case, and for the reasons set forth in Ruling on Motion for Order Declaring the Federal Sentencing Guidelines Unconstitutional (filed May 6, 1988), the court hereby declares that:

(1) 28 U.S.C. §§ 991–98 violate the constitutional doctrine of separation of powers and are therefore null and void;

(2) The Sentencing Guidelines, promulgated by the United States Sentencing Commission pursuant to an unconstitutional act of Congress, are themselves unconstitutional and are therefore null and void;

(3) 18 U.S.C. § 3553(a)(4) and (5), and (b), (c)(1) and (2), and (e), requiring the district courts to apply the Guidelines in imposing sentences, is unconstitutional and is therefore null and void;

(4) 28 U.S.C. §§ 991–98 and 18 U.S.C. § 3553(a)(4) and (5), and (b), (c)(1) and (2), and (e) are hereby severed from the remainder of the Sentencing Reform Act of 1984; and

(5) Defendant DiBiase shall be sentenced in accordance with the remaining valid provisions of the Sentencing Reform Act of 1984 and the statute governing his underlying offense.

It is so ordered.