UNITED STATES of America

v.

Miguel OLIVENCIA, Defendant.

No. 88 Cr. 64 (PKL).

United States District Court,
S.D. New York.

April 20, 1988.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, Richard K. Williard, Asst. Atty. Gen., Robert Cynkar, Deputy Asst. Atty. Gen., Douglas Letter, Thomas Millt, Attys., Dept. of Justice, Washington, D.C., Martin Klotz, John F. Savarese, Asst. U.S. Attys., New York City, of counsel, for U.S.

Caesar D. Cirigliano, The Legal Aid Society, Federal Defender Services Unit, Phylis Skloot Bamberger, Abraham L. Clott, Henriette D. Hoffman, David F. Silver, New York City, of counsel, for defendant.

John R. Steer, General Counsel, U.S. Sentencing Com'n, Paul M. Bator, Chicago, Ill., Andrew L. Frey, Kenneth S. Geller, Stephen G. Gilles, Mayer, Brown & Platt, Washington, D.C., of counsel, for U.S. Sentencing Com'n, amicus curiae.

## OPINION AND ORDER

LEISURE, District Judge:

## I. OVERVIEW

Like many other criminal defendants in federal district courts throughout the country, Miguel Olivencia challenges the constitutionality of the Sentencing Guidelines recently promulgated by the United States Sentencing Commission.[1] While no Court of Appeals has yet reviewed a district court holding in this area, it is likely that one will soon have such an opportunity and that the Supreme Court will then determine the Guidelines' ultimate fate. Appellate review will be especially welcome not only because of the guidance it will provide to sentencing judges and Congress, but also because lower court opinions to date have failed to establish a widely accepted rationale either for upholding the Guidelines or for finding them, in whole or in part, to be unconstitutional. Indeed, the most striking characteristic of district court decisions thus far has been the application by different judges of widely varying, and often times contradictory, analyses.

Of the judges that have to date declared the Guidelines invalid, only one has held that the substance of the Guidelines is itself unconstitutional. *See United States v. Frank,* 682 F.Supp. 815 at 819 (W.D.Pa. 1988) (ruling that while the Guidelines require a judge to determine whether certain facts relevant to sentencing are present in a particular case, the mandatory sentencing ranges imposed by the Guidelines undermine a defendant's due process right "to challenge the weight accorded to those facts").[2]

**1.** The Sentencing Commission was established, and the Guidelines were promulgated, pursuant to the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, § 991, 98 Stat. 1837, 2017 (codified at 28 U.S.C. § 991 (Supp. III 1985)). Congress provided:

(a) There is established as an independent commission in the judicial branch of the United States a United States Sentencing Commission which shall consist of seven voting members and one nonvoting member. The President, after consultation with representatives of judges, prosecuting attorneys, defense attorneys, law enforcement officials, senior citizens, victims of crime, and others interested in the criminal justice process, shall appoint the voting members of the Commission, by and with the advice and consent of the Senate, one of whom shall be appointed, by and with the advice and consent of the Senate, as the Chairman. At least three of the members shall be Federal judges selected after considering a list of six judges recommended to the President by the Judicial Conference of the United States. Not more than four of the members of the Commission shall be members of the same political party. The Attorney General, or his designee, shall be an ex officio, nonvoting member of the Commission. The Chairman and members of the Commission shall be subject to removal from the Commission by the President only for neglect of duty or malfeasance in office or for other good cause shown.

Congress stated that the purposes of the Commission are to:

(1) establish sentencing policies and practices for the Federal criminal justice system that (A) assure the meeting of the purposes of sentencing as set forth in section 3553(a)(2) of title 18, United States Code; (B) provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct while maintaining sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices; and (C) reflect, to the extent practicable, advancement in knowledge of human behavior as it relates to the criminal justice process; and (2) develop means of measuring the degree to which the sentencing, penal, and correctional practices are effective in meeting the purposes of sentencing as set forth in section 3553(a)(2) of title 18, United States Code.

**2.** Although not appearing specifically to hold the Guidelines unconstitutional by reason of their substantive provisions, Hon. Kevin Thomas Duffy, United States District Judge in this District, was highly critical of the substance of the guidelines in an oral opinion rendered recently. *United States v. Martinez,* 87 Cr. 1020 (KTD) (S.D.N.Y. April 11, 1988). Judge Duffy observed, *inter alia,* that "I had always thought prior to this time that the object of a sentence could be rehabilitation, general deterence or specific deterence, safety of society or retribution. It seems now, however, that a sentence is to be solely a retribution, an eye for an eye." *Martinez,* Record at 6. Judge Duffy stated that "I have for years resisted the idea of treating human beings [merely as cogs in a wheel in a large machine]. It is inappropriate for a judge to do so where the basic function of a judge is to resolve human problems, not problems necessarily on a societal basis but rather human problems. Thus we have a statute which calls for its own destruction perhaps. The purpose is to do away with disparity and yet it invites disparity [because it contains a provision permitting judges to create disparity]." *Id.,* Record

Rather, the judges who have found the Guidelines unconstitutional have done so primarily on grounds that the service of judges on the Sentencing Commission violates the separation of powers principle embodied in the Constitution. However, several different approaches to the separation of powers issue have been used. Two judges have found, for example, that while the Sentencing Commission is located in the judicial branch of government, its functions are actually executive in nature—namely, to implement a congressional mandate by interpreting, monitoring, and enforcing that mandate. *See United States v. Arnold*, 678 F.Supp. 1463 (S.D.Cal.1988); *United States v. Frank, supra.* Other judges have determined that the functions of the Commission are legislative—that is, to define federal crimes and to prescribe the punishments to be applied not just in a particular case or controversy, but in all future cases. *See, e.g., United States v. Estrada*, 680 F.Supp. 1312 at 1317 (D.Minn. 1988)[3]; *United States v. Tolbert*, 682 F.Supp. 1517, 1522 (D.Kan.1988) ("[t]he establishment of criminal penalties and fines has always been considered a legislative function"); *United States v. Martinez*, 87 Cr. 1020 (S.D.N.Y. April 11, 1988) (oral ruling per Duffy, J.) ("[j]udges are not supposed to be doing legislative work."). Moreover,

while judges who have found the Commission's functions to be executive have not questioned the general right of Congress to delegate the authority to establish sentencing guidelines, the *Estrada* court stated that the legislative function of creating sentencing guidelines should never be delegated to another branch. Similarly, in *Tolbert*, Hon. Patrick F. Kelly, United States District Judge, wrote that he "would concur with those who contend ... a standard [should be] derived which would not permit Congress to confer power which is 'legislative' in character to agencies or commissions." *United States v. Tolbert*, 682 F.Supp. at 1522.[4]

Similar disparities exist in the decisions upholding the Constitutionality of the Guidelines. For example, Hon. Adrian G. Duplantier, United States District Judge, found that the Commission performs executive functions. *See United States v. Chambless*, 680 F.Supp. 793 (E.D.La.1988). Judge Duplantier held that the Commission does not violate separation of powers principles because the judge/commissioners serve in a non-judicial capacity, as individuals; the judges serving on the Commission can simply recuse themselves from cases involving sentencing issues; and the President is entitled to remove members of a commission performing an executive func-

at 3–4. Judge Duffy was also concerned that "[t]he way the guidelines were set up makes it obvious to me ... that there will be an explosion in the prison population." Record at 4.

3. In *Estrada*, Hon. Gerald W. Heaney, United States District Judge, noted that while Congress can delegate to the judicial branch the authority to fashion rules of practice and procedure in the federal courts, "the delegation of judicial rule-making authority ... must be limited to procedural rulemaking." 682 F.Supp. at 1327. Judge Heaney concluded that the making of substantive laws is a legislative function, and observed that "[i]t is difficult to imagine a more substantive exercise of authority than that delegated to the Commission—prescribing the punishment for crime." *Id.* at 1328.

4. Furthermore, *Arnold* and *Frank* held that judges, as judges, cannot be compelled to serve on a commission performing executive functions. In *Arnold*, United States District Judge Rudi M. Brewster determined that the service of the judges as commissioners, as well as the permanent working relationship created be-

tween the judicial and executive branches on sentencing matters, would impair both the independence of the judiciary and the ability of the specific judge/commissioners to perform their Article III functions. *Arnold*, 678 F.Supp. 1463 at 1470–71. Judge Brewster also found that because the Judicial Conference nominates members of an executive commission, the judiciary's impartiality on sentencing matters, and the appearance of impartiality, is compromised. *Id.* at 1471. In *Estrada*, Judge Heaney ruled more broadly that judges can never even temporarily abandon their judicial role to perform services in other branches—even in an individual capacity. *Estrada*, at 1330–31; *see also Tolbert* (finding that "the judges were appointed to the Commission not because of their status as individuals, but because they are judges," and also concluding that "service by any Article III judge on any commission, whose duty it is to legislate, offends Article III of the Constitution."). In *Estrada*, Judge Heaney also found that the President's power to appoint and remove commissioners threatened the independence of the judges serving on the Commission. *Estrada*, at 1323.

tion. In contrast, Hon. William B. Enright, United States District Judge, found that the functions of the Commission are judicial—that is, to issue rules to aid performance of the judicial sentencing function. *See United States v. Ruiz–Villanueva*, 680 F.Supp. 1411 (S.D.Cal.1988) (noting that the sentencing function actually involves the powers of all three branches of government). Judge Enright explained that no separation of powers issues are raised by the Guidelines because judges can sit on a judicial commission; the impairment of the schedules of the three commissioner/judges is a constitutionally insignificant interference with the functions of the judicial branch; and the President—even with the power to remove Commission members —does not control the Commission or the commissioners.

These disagreements over rationale are reflected in the contrary positions taken in this case by the Justice Department and the Sentencing Commission, both of which argue that the Guidelines are constitutional.[5] On the one hand, the Justice Department claims that the Sentencing Commission is an executive agency, performing the executive functions of implementing, outside a case or controversy context, the sentencing policy considerations established by Congress. Government's Memorandum in Opposition to Defendant's Motion (hereinafter "Government's Memorandum") at 36. It is the Department's position that this Court should sever from the Sentencing Reform Act those provisions of 28 U.S.C. § 991(a) in which Congress designates the Commission as an independent commission in the judicial branch, because "assigning the executive function of promulgating sentencing guidelines to the judiciary raises Article III problems." Government's Memorandum at 51. The Justice Department claims that judicial power is limited to deciding cases and controversies; that promulgation of sentencing guidelines is not a judicial function; and that it violates separation of powers principles for the Presi-

dent to have power to remove members of a judicial branch commission.

Unlike the Justice Department, the Sentencing Commission argues that it is indeed properly located in the judicial branch, and that its functions are judicial because "it issues rules that are expressly designed solely to assist federal judges in pronouncing and imposing sentence." Brief for the United States Sentencing Commission as *Amicus Curiae* (hereinafter "Commission's Brief") at 40. The Commission argues that "Congress may enlist the services of federal judges in non-adjudicative tasks that aid in the performance of the judicial function," Commission's Brief at 50; that judges can serve on the Commission because they do so in an individual, rather than judicial, capacity; and that the President's power to remove commissioners does not impose executive branch control over the Commission.

## II. RIPENESS

■ In this case, the Justice Department argues in its brief that the issues presented in defendant Olivencia's motion are not yet ripe for adjudication. While it is true that Olivencia's challenge to an Act of Congress asks this Court to perform its "gravest and most delicate duty," *Fullilove v. Klutznick*, 448 U.S. 448, 472, 100 S.Ct. 2758, 2771, 65 L.Ed.2d 902 (1980), the Government's ripeness argument is nonetheless without merit.

" '[R]ipeness is peculiarly a question of timing,' " and " '[i]ts basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements.' " *Thomas v. Union Carbide Agricultural Products*, 473 U.S. 568, 580, 105 S.Ct. 3325, 3332, 87 L.Ed. 2d 409 (1985) (citations omitted). The question of ripeness "turns on 'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.' " *Pacific Gas & Electric v. State Energy Resources Conservation &*

---

**5.** To date, the Justice Department and the Sentencing Commission have presented contrary positions in all cases where the Commission has appeared as *amicus curiae*. Judge Duffy observed in *Martinez, supra,* that "[t]he Sentencing Guidelines Commission very definitely diametrically opposes some of the positions that the government has taken." *Martinez,* Record at 9.

*Development Commission,* 461 U.S. 190, 201, 103 S.Ct. 1713, 1720, 75 L.Ed.2d 752 (1983) (quoting *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967)). Where an issue is "purely legal, and will not be clarified by further factual development," *Thomas,* 473 U.S. at 581, 105 S.Ct. at 3333, that can "counsel in favor of finding the challenge ... ripe for adjudication." *Pacific Gas & Electric,* 461 U.S. at 201, 103 S.Ct. at 1720. Moreover, "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending that is enough." *Id.* (quoting *Rail Reorganization Act Cases,* 419 U.S. 102, 143, 95 S.Ct. 335, 358, 42 L.Ed.2d 230 (1974)). *See also Pennsylvania v. West Virginia,* 262 U.S. 553, 593, 43 S.Ct. 658, 663, 67 L.Ed. 1117 (1923).

Applying these standards, Olivencia's challenge to the Guidelines is ripe for adjudication. The issues involved are purely legal, and there is no further factual development that could clarify those issues for this Court. Moreover, the failure of this Court to consider Olivencia's challenge at this time would impose substantial hardship upon him. There can be little doubt that Olivencia's decision whether to plead guilty will be affected by his certainty as to whether the Guidelines will be applied in this case. *See United States v. Arnold,* 678 F.Supp. 1463, 1466 (S.D.Cal.1988) ("... defendants presently need to decide whether to tender a guilty plea or to risk trial. They would be assisted in making an informed decision by knowing more about their prospective sentence than what the statutory maximum is for each count."). In this case, the possible range of sentence without application of the Guidelines is substantially different from the sentencing range that can be imposed by the Guidelines. Moreover, the Guidelines virtually eliminate a court's discretion to give great weight, in sentencing, to a defendant's decision to enter a guilty plea. Olivencia thus suffers continuing uncertainty about a decision to go to trial if he is forced to depend on a set of Guidelines "whose authority is undermined because its constitutionality is in question." *Thomas v. Union Carbide,* 473 U.S. at 581,

105 S.Ct. at 3333. If Olivencia were to choose to go to trial prior to a ruling on the Guidelines, he would also not know whether the Court would be required to rely on certain trial evidence to determine a sentence in the event he were to be found guilty. Here, then, as in *Thomas,* "[n]othing would be gained by postponing a decision, and the public interest would be well served by a prompt resolution of the constitutionality" of the Sentencing Guidelines. *Id.* at 582, 105 S.Ct. at 333.

## III. THE SENTENCING GUIDELINES ARE UNCONSTITUTIONAL

As reflected in the district court opinions discussed above, a number of different grounds have been suggested for finding the Sentencing Guidelines unconstitutional. *See generally* Note, *The Constitutional Infirmities of the United States Sentencing Commission,* 96 Yale L.J. 1363 (1987) (authored by Lewis J. L. Liman) (discussing several different rationales for questioning the constitutionality of the Guidelines).

In this case, the Justice Department and the Sentencing Commission have presented alternative views of why the Sentencing Commission, and the Guidelines it has promulgated, should be upheld. However, whether the position of the Justice Department or the Commission is adopted, the Guidelines are nonetheless unconstitutional for two reasons.

First, if the Sentencing Commission is located in the judicial branch, as suggested by the Commission, then the ability of the President to remove the judges serving on the Commission undermines the separation of powers established by the Constitution. Second, if the Commission is located in the executive branch, as suggested by the Justice Department, then the separation of powers is undermined because Article III judges are performing non-judicial functions in another branch of government. Because this Court finds the Guidelines unconstitutional on these grounds, it is not necessary to consider defendant's remaining challenges to the Sentencing Reform Act.

### A. The President's Removal Power

■ The separation of powers among the three branches of government is a central factor in our constitutional scheme. "The declared purpose of separating and dividing the powers of government, of course, was to 'diffus[e] power the better to secure liberty.'" *Bowsher v. Synar*, 478 U.S. 714, 106 S.Ct. 3181, 3186, 92 L.Ed. 2d 583 (1986) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635, 72 S.Ct. 863, 870, 96 L.Ed. 1153 (1952) (Jackson, J., concurring)). As the Supreme Court has explained:

> That this system of division and separation of powers produces conflicts, confusion, and discordance at times is inherent, but it was deliberately so structured to assure full, vigorous and open debate on the great issues affecting the people and to provide avenues for the operation of checks on the exercise of governmental power.

*Bowsher v. Synar*, 106 S.Ct. at 3187.

The statute establishing the Sentencing Commission provides that "[t]he Chairman and members of the Commission shall be subject to removal from the Commission by the President only for neglect of duty or malfeasance in office or for other good cause shown." 28 U.S.C. § 991(a). In *Bowsher*, however, the Supreme Court determined that the power of one branch of government to remove officers charged with performing duties in another branch of government "is inconsistent with separation of powers." *Bowsher v. Synar*, 106 S.Ct. at 3187. As the Supreme Court observed, "[o]nce an officer is appointed, it is only the authority that can remove him, and not the authority that appointed him, that he must fear and, in performance of his functions, obey." *Id.* at 3188.

The Commission argues that the terms of the President's removal power do not give the President actual control over the commissioners. However, the terms of the President's removal power over the commissioners are similar to the terms of Congress' removal power over the Comptroller General in *Bowsher*. Here, the Sentencing Reform Act provides that commissioners can be removed for "neglect of duty or malfeasance in office or for other good

cause shown." 28 U.S.C. § 991(a). In *Bowsher*, Congress similarly could remove the Comptroller General for "inefficiency," "neglect of duty," or "malfeasance." *Id.* at 3190. In *Bowsher*, the Supreme Court stated that "[t]hese terms are very broad and, as interpreted by Congress, could sustain removal of a Comptroller General for any number of actual or perceived transgressions of the legislative will." *Id.* Moreover, the Supreme Court explicitly rejected the dissent's suggestion that it should make a "'realistic consideration' of the 'practical result of the removal provision.'" *Id.* Noting there that "[t]he separated powers of our government cannot be permitted to turn on judicial assessment of whether an officer exercising executive power is on good terms with Congress," *id.* at 3191, the Court concluded that:

> [t]he Framers recognized that, in the long term, structural protections against abuse of power were critical to preserving liberty. In constitutional terms, the removal powers over [an officer] dictate that he will be subservient [to the authority which can remove him].

*Id.*

Because the judge/commissioners are subject to removal by the President, the establishment of the Sentencing Commission in the judicial branch is unconstitutional.

### B. Performance of Non–Judicial Function

■ The Justice Department agrees with defendant Olivencia that if the Sentencing Commission is considered to be in the judicial branch, then the President's ability to remove commissioners undermines the separation of powers. The Justice Department suggests, though, that this Court should reject Congress' placement of the Commission in the judicial branch, and instead should determine that the Commission is performing an executive function in the executive branch. Even if the Commission is located in the executive branch, however, the performance by Article III judges of non-judicial functions unconstitu-

tionally undermines the independence and impartiality of the judiciary.[6]

As the Justice Department itself suggests, the promulgation of sentencing guidelines is a non-judicial function. Article III limits the judicial branch to the decision of cases and controversies. U.S. Const. Art. III, § 2. Article III has been interpreted to allow judges to promulgate rules of court procedure. *See Sibbach v. Wilson & Co.*, 312 U.S. 1, 9–10, 61 S.Ct. 422, 424, 85 L.Ed. 479 (1941). Judges are also able to perform certain internal disciplinary functions. *Chandler v. Judicial Council of the Tenth Circuit*, 398 U.S. 74, 90 S.Ct. 1648, 26 L.Ed.2d 100 (1970). Yet nothing in Article III allows judges to make substantive rules. *Sibbach v. Wilson & Co.*, 312 U.S. at 12–14, 61 S.Ct. at 425–26. Nor can judges make rules on matters external to the judicial function of resolving cases and controversies. *See* Note, *The Constitutional Infirmities of the United States Sentencing Commission*, 96 Yale L.J. at 1378.

The participation by judges in the promulgation of mandatory sentencing guidelines falls outside the scope of any conduct previously recognized to be authorized by Article III. Although the Commission claims that the Guidelines are merely rules promulgated in aid of the judicial sentencing function, the Guidelines can in no way be compared to the Federal Rules of Civil Procedure or judicial disciplinary rules. As the Justice Department correctly observes,

[s]entencing guidelines are not mere procedural rules.... In stark contrast, the sentencing guidelines virtually mandate that a judge impose a specified sentence within a circumscribed range of choices. Such power is plainly substantive in nature. The guidelines do far more than just regulate the behavior of judges in imposing sentence; they have a direct impact on the substantive rights of people outside the judicial branch, namely, individuals convicted of a federal crime. Accordingly, setting a sentencing code cannot be described as akin to establishing procedural rules.

Government's Memorandum at 55–56.

While the distinction between "substance" and "procedure" is obviously difficult to define, the Supreme Court has suggested that sentencing guidelines, such as those promulgated by the Commission, are properly considered "substantive" rules. In *Miller v. Florida,* —— U.S. ——, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987), the Court noted that the Florida state sentencing guideline at issue "appears to have little about it that could be deemed procedural." *Id.*, 107 S.Ct. at 2543. The Court explained that the Florida sentencing guidelines do not "simply provide flexible 'guideposts' for use in the exercise of [judicial] discretion: instead, they create a high hurdle that must be cleared before discretion can be exercised so that a sentencing judge may impose a departure sentence only after first finding 'clear and convincing reasons' that are 'credible,' 'proven beyond a reasonable doubt,' and 'not ... a factor which has already been weighed in arriving at a presumptive sentence.'" *Id.* at 2453–54 (citations omitted). The Court also observed that "the revised [Florida] guidelines directly and adversely affect the sentence petitioner receives." *Id.*

Indeed, the establishment of criminal penalties and fines is normally considered a legislative function. *See, e.g., Whalen v. United States*, 445 U.S. 684, 689, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715 (1980); *United States v. Evans*, 333 U.S. 483, 486 (1948);

---

**6.** The Justice Department and the Sentencing Commission also suggest that if this Court determines that the placement of the Sentencing Commission in either the executive or judicial branch is unconstitutional, then this Court should designate the Commission as an independent agency. Yet the constitutionality of "independent agencies" is itself suspect. *See Symposium on Administrative Law, The Uneasy Constitutional Status of Administrative Agencies*, 36 Am.U.L.Rev. 276 (1987); *see also* Note, *In Defense of Administrative Agency Autonomy*, 96 Yale L.J. 787, 788 (1987). And given the Supreme Court's determination in *Bowsher* that an officer is, in constitutional terms, "subservient" to the authority which can remove him, it would be inappropriate to treat the Sentencing Commission, whose members are subject to removal by the President, as an "independent" agency. Nor would characterizing the Commission as an independent agency cure the constitutional defect caused by the service of Article III judges in a non-judicial capacity.

*Ex Parte U.S.*, 242 U.S. 27, 42, 37 S.Ct. 72, 74, 61 L.Ed. 129 (1916). The Justice Department argues that establishment of Sentencing Guidelines is an executive function, because the Guidelines merely implement, outside a case or controversy context, the sentencing policy considerations directed by Congress. Whether the duties of the Commission be characterized as legislative or executive, however, those duties cannot be characterized as judicial, and therefore cannot be performed by Article III judges. Alexander Hamilton wrote that "the interpretation of the laws is the proper and regular province of the courts," and "liberty ... would have everything to fear from [the judiciary's] union with either of the other departments." *The Federalist* No. 78, at 484, 485 (A. Hamilton) (H.C. Lodge ed. 1888). The Supreme Court "has held that executive or administrative duties of a nonjudicial nature may not be imposed on [Article III] judges." *Buckley v. Valeo*, 424 U.S. 1, 123, 96 S.Ct. 612, 684, 46 L.Ed. 2d 659 (1976) (per curiam) (citing *United States v. Ferreira*, 13 How. 40, 14 L.Ed. 40 (1852); *Hayburn's Case*, 2 Dall. 409, 1 L.Ed. 436 (1792)).

Both the Commission and the Justice Department suggest, however, that the judges on the Commission serve not as judges, but instead as individuals. This argument ignores both Congress' intent and the judges' role on the Commission. First, Congress' placement of the Commission in the judicial branch, whether or not determinative of the Commission's location, certainly indicates a Congressional understanding that the *judicial branch*, rather than individuals who happen to be affiliated with that branch, will play a role in the establishment of sentencing guidelines. Indeed, the legislative history of the Sentencing Reform Act suggests that Congress believed that "even under this legislation, sentencing should remain primarily a judicial function." S.Rep. No. 225, 98th Cong., 1st Sess. 159 (1984), U.S.Code Cong. & Admin.News 1984, 3182, 3342. The Sentencing Reform Act specifically provides that "[a]t least three of the members [of the Commission] shall be Federal judges selected after considering a list of six judges recommended to the President by the Judicial Conference of the United States." 28 U.S.C. § 991(a). Nothing in the statute supports the suggestion that the Judicial Conference has been called upon to select judges as *individuals*, to serve on a commission performing a function Congress believed would rest in the judicial branch.

Moreover, to allow a judge to perform, as an individual, tasks he or she could not perform as a judge "would sacrifice both individual judicial independence and the interest of the judiciary as a whole in the control of its members." Note, *The Constitutional Infirmities of the United States Sentencing Commission*, 96 Yale L.J. at 1384. Service by a judge in a nonjudicial capacity can compromise the impartiality of the individual judge. *See In re President's Comm'n on Organized Crime Subpoena of Scaduto*, 763 F.2d 1191, 1197–98 (11th Cir.1985). Such judicial participation on the Commission also can compromise the impartiality of the other judges who will be called upon to enforce a substantive law which members of the judiciary have helped to write. This is especially true here, where the Commission adopts substantive rules which must be applied by judges in their capacity as judges. Indeed, when the Constitution's framers rejected a Council of Revision, to have been composed of a small number of members of the executive and judicial branches, Alexander Hamilton wrote that:

> [t]wo strong reasons may be imagined for this [rejection of the Council of Revision]. One is that the judges, who are to be the interpreters of the law, might receive an improper bias, from having given a previous opinion in their revisionary capacities; the other is that by being often associated with the Executive, they might be induced to embark too far in the political views of that magistrate, and thus a dangerous combination might by degrees be cemented between the executive and judiciary departments. It is impossible to keep the judges too distinct from every other avocation than that of expounding the laws. It is peculiarly dangerous to place them in a situation to be either corrupted or influenced by the Executive.

*The Federalist* No. 73, at 456, 462 (A. Hamilton) (H.C. Lodge ed. 1888). Yet the Sentencing Commission is a vehicle for an ongoing, collaborative relationship between the judicial and executive branches which undermines judicial independence with regard to the most extreme exercise of government power—namely, the establishment, implementation, and enforcement of criminal punishment.[7]

### CONCLUSION

Either because the Sentencing Reform Act gives the President power to remove Article III judges serving on a commission in the judicial branch, or because the Sentencing Reform Act requires judges to perform non-judicial functions not authorized by Article III of the Constitution, the United States Sentencing Commission, and the Sentencing Guidelines it has promulgated, are unconstitutional.

This Court need not determine whether the remaining provisions of the Sentencing Reform Act, other than those establishing the Sentencing Commission, are also unconstitutional. However, because the Sentencing Guidelines are a central element of the sentencing reform which became effective on November 1, 1987, defendant Olivencia shall, if necessary, be sentenced, in all respects, in accordance with the law applicable to criminal conduct which occurred prior to November 1, 1987.

SO ORDERED.

---

**7.** The Third Circuit has suggested that a judge may be able to serve *voluntarily* on an executive commission. *Matter of President's Commission on Organized Crime, Subpoena of Nicodemo Scarfo*, 783 F.2d 370, 378 (3d Cir.1986). However, here Congress has mandated that at least three judges serve on the Sentencing Commission. Thus, while a particular judge might decline nomination by the Judicial Conference for a position on the Commission, participation of judges on the Commission is by no means voluntary. While it is true that certain judges in our nation's history did perform non-judicial functions, those judges declined positions that might have compromised their independence.

*See* Note, *The Constitutional Infirmities of the United States Sentencing Commission,* 96 Yale L.J. at 1382 (citing Eisenberg, *A Consideration of the Extra–Judicial Activities in the Pre–Marshall Court Era,* 1985 Yearbook Supreme Ct. Hist.Soc'y 117, 125). *See also* Chief Justice Taney's account of *United States v. Todd* in *United States v. Ferreira,* 54 U.S. (13 How.) 40, 53 (where an "act of Congress intended to confer the power on the Courts as a judicial function, it could not be construed as an authority to the judges composing the courts to exercise the power out of court in the character of commissioners.")