UNITED STATES of America

v.

**Dezerrie CORTES, Defendant.**

No. 88 Cr. 159 (SWK).

United States District Court, S.D. New York.

Oct. 7, 1988.

---

Rudolph W. Giuliani, U.S. Atty. for S.D. N.Y., New York City by Cathy Seibel, Asst. U.S. Atty., for the Government.

The Legal Aid Society, Federal Defender Services Unit, New York City by Ruth M. Chamberlin, for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Defendant Dezerrie Cortes challenges the Sentencing Guidelines ("the Guidelines") promulgated by the United States Sentencing Commission ("the Commission") as violative of the United States Constitution ("the Constitution") and the Sentencing Reform Act ("the Act"). Cortes has been charged with the distribution of, and possession with intent to distribute, cocaine in the form commonly known as "crack" in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B) and 18 U.S.C. § 2. Defendant is currently engaged in plea negotiations with the government regarding these charges.

## BACKGROUND

The Sentencing Reform Act created the Sentencing Commission, as "an independent commission in the judicial branch...." 28 U.S.C. § 991(a). The Sentencing Commission consists of seven voting members, three of whom must be federal judges selected by the President. *Id.* Congress delegated to the Commission the authority to create guidelines to provide a structure for evaluating the fairness and appropriateness of punishment for individual offenders, and to establish greater uniformity in sentencing. Pursuant to this mandate, the Commission created the Sentencing Guidelines at issue, which became effective on November 1, 1987, as provided for by the Comprehensive Crime Control Act of 1984, Pub.L. 98–473, 98 Stat. 1837, 2017.

The defendant in the present case makes several constitutional and non-constitutional attacks on the Guidelines, the most compelling of which is that the placement of Article III judges on the Commission violates Article III and the separation of powers doctrine. Cortes further claims that the President's power to remove the judges from the Commission impairs the neutrality of the Commission, thereby violating the separation of powers and depriving her of due process of law.[1] Cortes also argues that Congress's delegation of authority to the Commission is unlawful because it fails to create adequate and sufficiently intelligible guidance to the Commission. The defendant also attacks alleged inconsistencies between the Act's provisions and the Guidelines.

---

**1.** The issue of the Guidelines' constitutionality has not been considered by this Circuit; but at least one Circuit has considered this issue and held that the Guidelines are unconstitutional. *Gubiensio–Ortiz v. Kanahele,* 857 F.2d 1245 (9th Cir.1988). The Supreme Court should resolve these issues in a case for which oral argument will be heard during the October 1988 term. *See U.S. v. Mistretta,* 682 F.Supp. 1033 (W.D.Mo. 1988), *cert. granted before judgment,* — U.S. ——, 108 S.Ct. 2818, 100 L.Ed.2d 920 (1988).

The Fifth Circuit has also acted on this issue. In consideration of the impending Supreme Court resolution of the constitutional issues, the Fifth Circuit has exercised its supervisory power to direct that all district courts in that Circuit apply the Guidelines pending the outcome of the case before the Supreme Court. *U.S. v. White,* 855 F.2d 201 (5th Cir.1988) (per curiam) (its ruling does not preclude further constitutional challenges to the Guidelines).

## DISCUSSION

### Ripeness

 The government raises a ripeness argument, contending that the defendant's motion to challenge the Guidelines is unfit for judicial decision until she either pleads guilty or is convicted. The defendant argues that she cannot consider a plea while the constitutionality of the Sentencing Guidelines remains at issue because, among other things, the possible range of sentence under the old law is dramatically different from that under the Guidelines. Several district courts have held that a constitutional attack on the Guidelines is a ripe controversy even though the defendant has neither plead guilty nor been tried and convicted. *See, e.g., United States v. Olivencia,* 689 F.Supp. 1319 (S.D.N.Y. 1988); *United States v. Macias–Pedroza,* 694 F.Supp. 1406 (D.Ariz.1988); *United States v. Ruiz–Villanueva,* 680 F.Supp. 1411 (S.D.Cal.1988); *United States v. Arnold,* 678 F.Supp. 1463 (S.D.Cal.1988).

As a threshold inquiry, this Court must decide whether the defendant's constitutional challenge to the Sentencing Guidelines establishes a concrete case or controversy. *Thomas v. Union Carbide Agricultural Products,* 473 U.S. 568, 579, 105 S.Ct. 3325, 3332, 87 L.Ed.2d 409 (1985); *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 138–39, 95 S.Ct. 335, 355–56, 42 L.Ed.2d 320 (1974). The basic rationale of the ripeness doctrine is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements. *Thomas,* 473 U.S. at 580, 105 S.Ct. at 3332.

Ripeness analysis involves a two-part consideration of "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed. 2d 681 (1967). On the issue of fitness for

judicial decision, the government contends that since the sentencing of Cortes is a contingent event that may never occur, it is unfit for judicial consideration. As the government argues, the defendant may decide to enter a not guilty plea and thereafter be acquitted at trial. The Supreme Court, however, has held that a purely legal issue that requires no further factual development to clarify the dispute is more likely than not to be fit for review. *Thomas,* 473 U.S. at 581, 105 S.Ct. at 3333. Clearly, the constitutional attack on the Sentencing Guidelines presents a purely legal issue that can be resolved with no further factual development.

The second part of this analysis involves consideration of the hardships the parties would suffer if this Court refrained from considering defendant's motion. The Guidelines, if applied, would significantly limit the range of Cortes's probable sentence, creating a significant disparity between the possible range of sentences under the Guidelines as compared to pre-Guideline law.[2] The disparity between the prior sentencing scheme and the Guidelines highlights the uncertainty Cortes will face if forced to rely on a set of Guidelines "whose authority is undermined because its constitutionality is in question." *Thomas,* 473 U.S. at 581, 105 S.Ct. at 3333.

The Constitution requires that all guilty pleas be voluntarily and intelligently made. *See North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). Furthermore, the Federal Rules of Criminal Procedure require that this Court inform the defendant of, and determine that he understands, "the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law for the offense to which the plea is offered." Fed.R.Crim.P. 11(c)(1). These requirements may not be met, at least as a practical matter, if Cortes makes her plea

**2.** In addition to the uncertainty concerning the range of possible sentences, the defendant also faces uncertainty from the possible application of other Guideline requirements. Under pre-Guideline law, a defendant's decision to enter a guilty plea that reflects the defendant's remorse and contrition might result, at the court's discretion, in a considerably more lenient sentence. The Guidelines have limited this discretion and allow the courts to reduce the defendant's offense level by only two points. Pre-Guideline law also granted the courts more discretion in what evidence to consider in sentencing.

decision before this Court determines the applicability of the Guidelines.

The requirement that a defendant know the range of possible sentences at the time she makes a guilty plea underscores the importance to the defendant of knowing the constitutionality of the Guidelines prior to her plea. In view of the substantial changes the Guidelines make in the sentencing process, Cortes's decision whether to plead guilty probably will be affected by her uncertainty as to whether the Guidelines will be applied in this case. This uncertainty creates a considerable hardship for the defendant. Upon application of the ripeness test set forth by the Supreme Court in *Abbott*, this Court rejects the government's ripeness argument and concurs instead with Judge Leisure of this Court that " '[n]othing would be gained by postponing a decision, and the public interest would be well served by a prompt resolution of the constitutionality' of the Sentencing Guidelines." *U.S. v. Olivencia*, 689 F.Supp. 1319, 1323 (S.D.N.Y.1988) (quoting *Thomas*, 473 U.S. at 582, 105 S.Ct. at 3333). This Court thus finds that the constitutionality of the Guidelines presents a ripe issue for consideration.

The Sentencing Guidelines

 The defendant attacks the Guidelines on statutory and constitutional grounds. Defendant's primary non-consti-

tutional ground is that the Sentencing Guidelines are inconsistent with, and therefore in violation of, the Sentencing Reform Act of 1984.[3] The Court has reviewed this argument and concludes that the Guidelines are fully consistent with the Sentencing Act. On this point, the Court adopts the reasoning of Judge Mukasey in *United States v. Mendez*, 691 F.Supp. 656, 662–66 (S.D.N.Y.1988). *See also U.S. v. Sumpter*, 690 F.Supp. 1274 (S.D.N.Y.1988) (Conboy, J.).

The Constitutionality of the Guidelines

 Defendant raises several constitutional objections to the Act and the Guidelines, the most compelling of which are that the Guidelines violate the separation of powers doctrine.[4] The Act violates the separation of powers, according to the defendant, because the judge-commissioners are engaged in rule-making and the administration of the statute, in violation of Article III, and that by so doing the functioning of the judiciary is impaired. The defendant also claims that the removal power of the President, as chief executive and chief law enforcement officer, impairs the neutrality of the Commission, thereby violating the principle of separation of powers and depriving defendant due process of law.[5]

The Justice Department acknowledges that Congress's designation of the Sentenc-

---

**3.** The Guidelines were not passed by both houses of Congress and presented to the President for signature. Thus, they are mere regulations, not legislation, and as such must be consistent with their enabling statute. *See Manhattan Gen. Equip. Co. v. Comm'r*, 297 U.S. 129, 134, 56 S.Ct. 397, 399, 80 L.Ed. 528 (1936). Cortes alleges that the Guidelines are a nullity because they are inconsistent with the Act in the following general areas: probation, prison overcrowding, supervisory release, mandatory fines, rewarding defendant's for cooperation, the imposition of concurrent sentences, and the failure to eliminate unwarranted disparity in sentencing. *See* Defendant's Memorandum of Law at 64–90.

**4.** The separation of powers doctrine is based on the Constitution's division of delegated powers between the three branches of government. Its purpose is to better secure liberty by separating and diffusing the powers of government. *Bowsher v. Synar*, 478 U.S. 714, 721, 106 S.Ct. 3181, 3186, 92 L.Ed.2d 583 (1986); *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 72

S.Ct. 863, 96 L.Ed. 1153 (1952) (Jackson, J., concurring). The rationale for, and continuing importance of, the separation of powers is best illustrated by the warning that "[t]he accumulation of all powers legislative, executive and judiciary in the same hands, whether of one, a few or many, ... may justly be pronounced the very definition of tyranny." *INS v. Chadha*, 462 U.S. 919, 960, 103 S.Ct. 2764, 2780, 77 L.Ed.2d 317 (1983) (Powell, J., concurring) (quoting *The Federalist* No. 47, at 324 (J. Madison) (J. Cooke ed. 1961)); *see also Mendez*, 691 F.Supp. 656 (S.D.N.Y.1988) (Judge Mukasey considers extensive individual rights guaranteed in the Constitution of the Soviet Union and suggests that many of these rights may be violated at will because, among other reasons, the Soviet system does not separate powers).

**5.** This court bases its holding on the Act's violation of the separation of powers doctrine, and thus need not consider Cortes's due process argument.

ing Commission as a Judicial branch entity raises potentially serious constitutional problems. Government's Memorandum of Law at 51–61. In particular, the Sentencing Reform Act provides that commissioners can be removed for "neglect of duty or malfeasance in office or for other good cause shown." 28 U.S.C. § 991(a). As the Justice Department admits, the broad powers of the President to remove the commissioners for, among other reasons, "other good cause shown," undermines the separation of powers by granting the President too much power over the federal judges acting as commissioners. The Justice Department argues, however, that this constitutional flaw may be cured by this Court's re-definition of the Commission as an Executive branch entity, despite Congress's designation of it as a Judicial one. *Cf. United States v. Ruiz–Villanueva*, 680 F.Supp. 1411 (S.D.Cal.1988) (court re-defines the Commission as a independent commission in the Judicial branch).

The Justice Department's suggested categorization of the Commission as part of the Executive branch would not strip the Act of all its constitutional flaws. Furthermore, this Court is hesitant to re-write a statute that clearly identifies the Commission as an "independent commission in the judicial branch ..." 28 U.S.C. § 991(a). To do otherwise undoubtedly would contradict the intention of Congress—regardless of the constitutional failings of its action—to establish a Judicial branch commission, thus ensuring the close involvement of the Federal Judiciary in creating the Guidelines.[6] The Act either stands or falls under constitutional scrutiny as enacted.

The labelling of the Commission as part of a particular governmental branch is not essential to the analysis of this Act under the separation of powers doctrine. Instead of reliance on such labels, this Court must decide if the Act impermissibly disturbs the functional division of power among the branches. *See, e.g., Nixon v. Administrator of General Services*, 433 U.S. 425, 443, 97 S.Ct. 2777, 2790, 53 L.Ed.2d 867 (1977)

(decided that legislation limiting access of ex-President to Executive documents from his Presidency did not interfere with the functioning of Executive branch power); *United States v. Nixon*, 418 U.S. 683, 707, 94 S.Ct. 3090, 3107, 41 L.Ed.2d 1039 (1974) (held that the separation of powers did not support absolute Presidential immunity from judicial process because such immunity would conflict with the function of the courts under Article III).

Recent Supreme Court cases evidence a concern for apparently minor infringements by one branch on the delegated powers of another. The Court in *Bowsher, Chadha* and *Buckley* held that a Congressional initiative that would have likely enhanced its own authority, and diminished that of the Executive branch unconstitutionally threatened the delicate balance of powers between the branches. *Bowsher v. Synar*, 478 U.S. 714, 721, 106 S.Ct. 3181, 3186, 92 L.Ed.2d 583 (1986) (Congress's retention of removal power over the Comptroller General, whose duties under the Balanced Budget and Emergency Deficit Control Act of 1985 were executive in nature, is unconstitutional); *INS v. Chadha*, 462 U.S. 919, 957–58, 103 S.Ct. 2764, 2787–88, 77 L.Ed.2d 317 (1983) (one house legislative veto is a judicial function, violating the separation of powers); *Buckley v. Valeo*, 424 U.S. 1, 113, 96 S.Ct. 612, 679, 46 L.Ed.2d 659 (1976) (appointment by Congress of a majority of the voting members of the Federal Election Commission infringes Executive branch authority, thus violating the separation of powers).

In the most recent separation of powers case, the Court decided that the limits on the President's authority to remove the independent counsel under the Ethics in Government Act of 1978 did not impermissibly interfere with the President's control, as chief executive, of the prosecutorial powers of the independent counsel. *Morrison v. Olson*, —— U.S. ——, 108 S.Ct. 2597, 2620–22, 101 L.Ed.2d 569 (1988). The *Morrison* Court, however, held that the power

---

**6.** Congress apparently labelled the Commission as a Judicial branch entity out of the belief that "sentencing should remain primarily a judicial

function." S.Rep. No. 225, 98th Cong., 1st Sess. 159, *reprinted in* 1984 U.S.Code Cong. & Admin. News 3182, 3342.

to appoint the independent counsel was not inconsistent with Article III and properly pursuant to the Appointments Clause.[7]

Under present law, the separation of powers may be violated in two ways. First, the Sentencing Reform Act violates the separation of powers if it grants one branch—i.e., the Judiciary—powers more properly exercised by another branch. *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587–89, 72 S.Ct. 863, 866–67, 96 L.Ed. 1153 (1952); *Chadha*, 462 U.S. at 963, 103 S.Ct. at 2790 (Powell, J., concurring). Second, the Act may also violate the separation of powers if it "prevents [the Judiciary] from accomplishing its constitutionally assigned functions" in the absence of an "overriding need to promote objectives within the constitutional authority of Congress." *Nixon v. Administrator of General Services*, 433 U.S. at 443, 97 S.Ct. at 2790.

This Court shall first consider the potential threat of Executive interference with the Judicial branch by virtue of the President's broad powers under the Act to remove the judge-commissioners from the Commission. Second, the Court will consider the threat to the impartiality of the Judiciary posed by requiring federal judges to be members of the Commission.

### 1. The President's Removal Power

The Act provides that the President may remove Commission members "for neglect of duty or malfeasance in office or for other good cause shown." Such an amorphous standard gives the President nearly unfettered discretion to remove commissioners, thus unacceptably threatening judicial independence.[8]

This Court agrees with the recent opinion of Judge Conboy in *Sumpter*, which distinguished the alleged constitutional problems created by the limitations on the President's power to remove the independent counsel in *Morrison v. Olson*, from the more serious problem created by the President's broad authority to remove Article III judges serving on the Commission. According to Judge Conboy, "The ultimate and decisive question in such matters going to the separation of powers doctrine, the Court concluded in *Morrison*, is whether a removal power impedes the ability of a constitutional officer to perform his or her constitutional duty. In that case, the President's constitutional duty was found not to be impermissibly injured by a limiting removal power. Here, the constitutional authority of federal judges is impermissibly injured by an expanding removal power." *Sumpter*, 690 F.Supp. at 1282.

In *Bowsher*, the Supreme Court considered a provision granting executive powers to the Comptroller General, who Congress may remove from office at any time for the following reasons: permanent disability, inefficiency, neglect of duty, malfeasance, a felony or conduct involving moral turpitude. 31 U.S.C. § 703(e)(1). As the *Bowsher* Court acknowledged, "it is the Comptroller General's presumed desire to avoid removal by pleasing Congress, which creates the here-and-now subservience to another branch that raises separation-of-powers problems." *Bowsher*, 106 S.Ct. at 3189 n. 5 (1986) (quoting *Synar v. United States*, 626 F.Supp. 1374, 1392 (D.D.C.1986) (same case)). The Supreme Court in *Bowsher* was concerned that the effect of the threat of removal under such a provision places the Comptroller General under the substantial control of the Congress. The President's removal powers pose a similar threat in this case. Here, the President's similarly broad removal powers over

---

7. U.S. Constitution, Article II, § 2.

8. Judge Conboy of this Court wrote in illustration of the potential threat this removal provision creates:

Think of it: a United States Judge under attack by the President for neglect of duty. Who can doubt that this would be a riveting and damaging contest played out in the full and unforgiving presence of the nation's newspapers, radio microphones, and television cameras. During what would undoubtedly be protracted and notorious inter-Branch strife, how could such a judge, so accused, maintain the confidence of the parties on his criminal and civil dockets in the dignity and stature of his court? The plain answer is that he could not.

*United States v. Sumpter*, 690 F.Supp. 1274, 1282 (S.D.N.Y.1988).

the commissioners, three of whom are Article III judges, threatens to interfere with the essential impartiality of the Federal Judiciary.

### 2. The Act's Imposition of Non–Judicial Functions

The promulgation of the Guidelines, which was the primary responsibility of the Commission, is essentially an executive function that has been delegated to a Commission composed, in part, of Article III judges. *See, e.g., United States v. Dibiase,* 687 F.Supp. 38, 43 (D.Conn.1988) (Commission exercises an inherently executive function); *United States v. Smith,* 686 F.Supp. 847, 861 (D.Colo.1988) (Commission's functions naturally fall within the parameters of the executive); *United States v. Arnold,* 678 F.Supp. 1463, 1469–70 (S.D.Cal.1988) (Commission performs executive function). The Supreme Court has clarified that "interpreting a law enacted by Congress to implement the legislative mandate is the very essence of 'execution' of the law." *Bowsher,* 106 S.Ct. at 3192. Under this language the Commission's primary function, which is the interpretation and implementation of the Act by the creation of Guidelines, appears to be an executive function.

The Supreme Court has "long recognized that by the express provision of Article III, the judicial power of the United States is limited to cases and controversies." *Morrison,* 108 S.Ct. at 2611–12 (citing *Muskrat v. United States,* 219 U.S. 346, 356, 31 S.Ct. 250, 253, 55 L.Ed. 246 (1911)). The *Morrison* court restated as a general rule that "executive or administrative duties of a nonjudicial nature may not be imposed on judges holding office under Article III of the Constitution." *Morrison,* 108 S.Ct. at 2612; *see Buckley,* 424 U.S. at 123, 96 S.Ct. at 684. The purpose of this limitation on judicial duties is to help "ensure the independence of the Judicial branch and to pre-vent the judiciary from encroaching into areas reserved for the other branches." *Morrison,* 108 S.Ct. at 1612.[9]

Article III judges may perform certain internal disciplinary functions, *Chandler v. Judicial Council of the Tenth Circuit,* 398 U.S. 74, 90 S.Ct. 1648, 26 L.Ed.2d 100 (1970), and also may promulgate rules of court procedure, but they may not make substantive rules. *See Sibbach v. Wilson & Co.,* 312 U.S. 1, 9–10, 12–14, 61 S.Ct. 422, 424–25, 425–27, 85 L.Ed. 479 (1941). The Guidelines at issue here are more than mere procedural rules, and cannot fairly be analogized to judicial disciplinary rules or the Federal Rules of Civil Procedure.

Upon reviewing similar guidelines issued by the state of Florida, the Supreme Court recently held that those sentencing guidelines were substantive rules. *Miller v. Florida,* —— U.S. ——, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (state guidelines that dictate a presumptive sentence range within which judge has discretion to sentence without written explanation were substantive, not procedural, laws). According to the *Miller* Court, the Florida guidelines "created a high hurdle that must be cleared before discretion can be exercised, so that a sentencing judge may impose a departure sentence only after first finding clear and convincing reasons." *Id.* 107 S.Ct. at 2454. The Court rejected the argument that those guidelines merely guide and channel the sentencing judge's discretion.

Similarly, the Guidelines under review in this case do not merely "guide" judges in their decision-making function. They impose upon judges a sentencing regime subject to modification only in special circumstances. *See* 18 U.S.C. § 3553(b). The creation of such a mandatory and substantive set of rules must be categorized as substantive executive or legislative rule-making. Therefore, the Act has thrust upon the members of the Commission responsibilities that exceed those permitted of Arti-

---

**9.** The importance of separating the work of the Judiciary from the more political powers delegated to the other branches has been a central tenet of our system of government since its beginning. Alexander Hamilton wrote that "the interpretation of the laws is the proper and regular province of the courts," and "liberty ... would have everything to fear from [the judiciary's] union with either of the other departments." *Olivencia,* 689 F.Supp. at 1326 (quoting *The Federalist* No. 78, at 484, 485 (A. Hamilton) (H.C. Lodge ed. 1988)).

cle III judges. Since this Act also requires that at least three federal judges be Commission members, all of whom are Article III judges, it is unconstitutional.

The Government contends that an "unbroken history of appointment of members of the Federal judiciary to non-judicial duties" exists that supports the constitutionality of the composition of the Commission under Article III and the separation of powers doctrine. First, this Court finds that no such continuous history exists; [10] and second, even if such a history exists, this Court finds that mandatory membership of federal judges on the Commission is nevertheless unconstitutional.

The delegation of non-Article III powers to the Judicial branch was upheld in *Morrison*. *Morrison*, however, is distinguishable from the present case because the powers under review in *Morrison* were authorized under the Appointments Clause,[11] and were not in violation of the restrictions Article III places on extra-judicial activity. The challenged Act in *Morrison* actually vested in a special court composed of Article III judges—the Special Division—the power to choose the independent counsel and define his or her jurisdiction. The Court held that the challenged responsibilities of the Special Division were not prohibited by Article III and were authorized by the Appointments Clause. The *Morrison* court found that the independent counsel is an "inferior officer" under the Constitution and that Congress's power under the Appointments Clause to vest the appointment of inferior officers in the courts may, in certain circumstances, allow Congress to give the courts some ancillary discretion in defining the nature and scope of the appointed official's authority. *Morrison*, 108 S.Ct. at 2612. The Supreme Court clarified that the powers given to the Special Divi-

sion were not "in any way inconsistent as a functional matter with the courts' exercise of their Article III powers." *Morrison*, 108 S.Ct. at 2612, n. 16. In support of this proposition, the Court added that the courts had a long history of appointing commissioners, magistrates and clerks.

The quasi-administrative, quasi-legislative responsibilities of the Commission under the Act are not derived from the Appointments Clause. Furthermore, unlike the power to appoint certain "inferior officers", the creation and promulgation of detailed sentencing guidelines exceed the limited rule-making powers permitted the judiciary under Article III. *See, e.g., Mendez*, 691 F.Supp. 656 (S.D.N.Y.1988). Although the Second Circuit has not considered this issue, the Ninth Circuit has held that the Commission's responsibilities under the Act, which mandates the membership of federal judges, violates Article III and the separation of powers. *Gubiensio–Ortiz v. Kanahele*, 857 F.2d 1245 (9th Cir.1988). The Commission's role, according to the Ninth Circuit, is "quintessentially political in nature, requiring substantive, policy decisions that are intended to affect all future federal criminal defendants—a far cry from Article III's limited grant of judicial power to decide cases and controversies." *Id.* at 1258. This Court concurs with this analysis of the extensive rule-making powers delegated to the Commission under the Act and accordingly distinguishes this case from *Morrison*.

The Government contends that the three judges actually appointed to the Commission were not appointed as judges, but rather as individual commissioners. Government Memorandum at 40. In reliance on a Third Circuit case, the Government argues that Congress may give Article III judges extra-judicial duties in their

**10.** *See* Note, *The Constitutional Infirmities of the United States Sentencing Commission*, 96 Yale L.J. 1363, 1383 (1987) ("The practice of judges performing extrajudicial activities is thus not nearly as 'unbroken' and 'systematic', as would be necessary to support the implication of a constitutional norm.") Although federal Judges have served on Presidential advisory commissions, like the Warren Commission, the Sentenc-

ing Commission is not advisory, but instead has drafted Guidelines that have the force of law.

**11.** Under the Appointments Clause, Congress is empowered to "vest the appointment of such inferior officers as they think proper in the President alone, in the courts of law, or in the heads of departments." U.S. Constitution, Article II, § 2.

individual capacity, even though the separation of powers doctrine and Article III would prohibit courts from exercising the same duties. *In the Matter of the President's Commission on Organized Crime Subpoena of Nicodemo Scarfo*, 783 F.2d 370 (3rd Cir.1986). In *Scarfo*, however, the Third Circuit identified two significant factors in holding that the Act at issue in that case was constitutional, that is, that the "work of the Commission [on Organized Crime] is nonjudicial and that the service of the judges is voluntary." *Id.* at 376. In the present action, the Government argues that the membership of Article III judges on the Sentencing Commission is similarly voluntary and, thus, should be upheld as constitutional. This court disagrees because the Act specifically requires that at least three members of the Commission be federal judges. 28 U.S.C. § 991.

The "voluntariness" factor identified in *Scarfo* relates to the enabling statute in that case, which did not require the participation of Article III judges. The Third Circuit even distinguished the voluntary nature of judicial participation in the President's Commission on Organized Crime from the mandatory nature of participation on the Sentencing Commission. *Scarfo*, 783 F.2d at 376 n. 3.

The Eleventh Circuit, faced with the same constitutional challenge as considered by the *Scarfo* court, held that the presence of two Article III judges on the President's Commission on Organized Crime violated the separation of powers. *In re Application of the President's Commission on Organized Crime Subpoena of Lorenzo Scaduto*, 763 F.2d 1191 (11th Cir.1985). The *Scaduto* court focused on the importance of protecting the actual impartiality of the judiciary, as well as the appearance of such impartiality. Thus, that court found that the inclusion of judges on the Commission, even though not mandated by statute, violated the separation of powers.

This court shares the *Scaduto* court's concern for the impartiality, both in fact and in appearance, of the Judicial branch. Judicial impartiality "is one of the central,

constitutionally-ordained, requirements of the federal judicial office." *Scaduto*, 763 F.2d at 1197. If a judge could perform roles as an individual that he or she is forbidden to perform as a judge, this would sacrifice both individual judicial independence and the interest of the judiciary as a whole in the control of its members. *Olivencia*, 689 F.Supp. at 1326 (citing Note, *The Constitutional Infirmities of the United States Sentencing Commission*, 96 Yale L.J. at 1384 (1987)).

The Government also raises a *"de minimus"* argument, contending that "service by the three judges, one of whom holds senior status, ... clearly does not materially impair the ability of the Federal Judiciary to function." Government's Memorandum of Law at 50. This Court cannot accept this argument. While this argument may seem persuasive at first, it must be considered in the context of the important role that the separation of powers has played in the protection of liberty and avoidance of tyranny since our system of government was established. In this context, this court must dismiss the *"de minimus"* argument as specious.

The slightest interference with the ability of the Judicial branch to complete its constitutionally-ordained functions must be closely scrutinized. Here, a significant threat to the impartiality of the judiciary is posed by the mandatory involvement of federal judges as commissioners. The Judicial branch has limited enforcement powers and significantly relies on the persuasiveness of its decisions in order to ensure their enforcement. The Judicial branch's power to persuade is built, in significant part, on its reputation for integrity. Furthermore, the preservation of the integrity of the judiciary requires that litigants sustain equal faith in the impartiality of judges. The importance of Judicial branch integrity "is more than just a matter of judges satisfying themselves that the environment in which they work is sufficiently free of interference to enable them to administer the law honorably and efficiently. Litigants and our citizenry in general must also be satisfied." *Scaduto*, 763 F.2d at 1198–99. Judicial participation

on the Commission by individual judges may compromise the impartiality of those judges who will be called upon to enforce the Guidelines, as well as those who sit as Commission members. Such impartiality may take the form of an unwarranted presumption of legality in Commission actions.

For the aforementioned reasons, this Court finds that the Act violates the constitutional doctrine of separation of powers. The Commission creates a permanent collaborative relationship between the Judicial and Executive branches that threatens judicial independence. Furthermore, the government has failed to establish that the Act's disruption of the proper functioning of the Judicial branch "is justified by any overriding need to promote objectives within the constitutional authority of Congress." *Nixon v. Administrator of General Services*, 433 U.S. 425, 443, 97 S.Ct. 2777, 2790, 53 L.Ed.2d 867 (1977).

3. Severability

■ An unconstitutional provision of a statute is not severable from its valid provisions if "... the Legislature would not have enacted those provisions which are within its power, independently of that which is [unconstitutional]." *Buckley*, 424 U.S. at 108, 96 S.Ct. at 677. A court must ask "whether the statute will function in a manner consistent with the intent of Congress" if the constitutionally infirm provisions are severed. *Alaska Airlines, Inc. v. William E. Brock*, 480 U.S. 678, 107 S.Ct. 1476, 1481, 94 L.Ed.2d 661 (1987).

The Sentencing Guidelines are a substantial part of the sentencing reform that became effective on November 1, 1987. This Court finds that Congress would not have passed such sentencing reform legislation without the Guidelines. Therefore, the constitutionally infirm Guidelines may not be severed from other sentencing reform legislation because to do so would frustrate Congress's intent as evidenced in all sentencing reform legislation. *See Gubiensio-Ortiz v. Kanahele*, 857 F.2d 1245 (9th Cir.1988) (absence of severability clause and the statutory scheme support inference that Congress intended that all components of sentencing reform operate together).

## CONCLUSION

The United States Sentencing Commission, and the Guidelines it has promulgated, are unconstitutional. The mandatory placement of three federal judges on the Commission violates Article III and threatens to substantially impair the impartiality of the Federal Judiciary. The President's broad authority to remove the judge-commissioners from the Commission further threatens the impartiality of the Judicial branch. This threat to the impartiality of the Judicial branch, in actuality and appearance, impairs the ability of the Federal Judiciary to perform its constitutionally assigned functions. Consequently, the Act violates the separation of powers. This Court further finds that the Guidelines are not severable from other sentencing reform provisions.

SO ORDERED.